CYPRESS–FAIRBANKS INDEPENDENT
SCHOOL DISTRICT, Plaintiff,

v.

MICHAEL F. by next friend Mr. and
Mrs. BARRY F., Defendants.

Civil Action No. H–94–2944.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 13, 1995.

Order Denying New Trial and
Awarding Costs Feb. 15, 1996.

Janet Little Horton, Bracewell & Patterson, Houston, TX, for Cypress–Fairbanks Independent School District.

Daniel Lee McCall, Houston, TX, for Michael F.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HARMON, District Judge.

Pending before the Court are plaintiff Cypress–Fairbanks Independent School District's ("Cy–Fair") Motion for Judgment and Closing Argument (Instrument # 61) and defendant Michael F. b/n/f Mr. and Mrs. Barry F.'s ("Michael") Motion for Summary Judgment and Motion for Judgment (Instrument # 62). This case is an appeal by Cy–Fair of a Texas Education Agency hearing officer's decision requiring Cy–Fair to reimburse Michael's parents for the cost of the unilateral placement of Michael in a residential treatment facility. Having completely and thoroughly reviewed the voluminous administrative record generated before the hearing officer and the submissions of the parties, and having heard supplemental evidence presented at the evidentiary hearing held on September 5, 1995, and having considered the applicable law, the Court concludes that the decision of the hearing officer should be **REVERSED.**

The case is brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.* The IDEA requires that state school districts, in

return for federal funding, must provide all handicapped children with "a free appropriate public education." 20 U.S.C. § 1412(1). That education must be "tailored to the unique needs of the handicapped child by means of an 'individualized education program' ('IEP')." 20 U.S.C. § 1401(a)(20). The IEP, which is child-specific, is a written statement describing a child's level of educational performance, annual goals, specific services to be provided, transition services needed, the period of time for which they are required, and annual evaluation procedures. *Id.* The child's parents or guardian, teacher, and a representative of the local education agency,[1] together formulate the IEP and review it at least annually. 20 U.S.C. § 1401(18, 19); § 1414(a)(5).

■ An "appropriate" education does not mean the best possible or optimal one, nor must the school district "maximize the potential" of handicapped students; rather it means "providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" at public expense, under public supervision, and approximating the State's educational standards in its regular education. *Hendrick Hudson Central School Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 187–205, 102 S.Ct. 3034, 3041–50, 73 L.Ed.2d 690 (1982); *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127 (5th Cir.1993). Rather than establishing a particular substantive level of education, the IDEA's intention is to provide the handicapped child with access to an adequate, publicly funded education. *Rowley*, 458 U.S. at 193–94, 102 S.Ct. at 3044–45.

### Standard of Review

■ The Fifth Circuit has held that when reviewing a state hearing officer's decision under the IDEA, a district court should give the hearing officer's findings "due weight," but the hearing officer's findings are not conclusive. *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir.1993). A district court is to perform a virtually *de novo* review of the hearing officer's decision and

reach an independent conclusion based upon the preponderance of the evidence. *Id.* The Fifth Circuit has held that there is a presumption in favor of the educational placement established by a student's IEP, and the party attacking its terms should bear the burden of showing why the educational setting established by the IEP is not appropriate. *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1291 (5th Cir.1991).

### Initial Background

This case is brought by Cy–Fair as an appeal of the Texas Education Agency's hearing officer's decision in *Michael F. b/n/f Mr. and Mrs. Barry F. v. Cypress–Fairbanks Indep. Sch. Dist.*, Docket No. 070–SE–1193. An administrative hearing was held in April 1994 concerning the claims brought by Michael's parents. His parents sought reimbursement of costs expended for Michael's unilateral placement by his parents at a residential treatment facility in Utah, Provo Canyon School ("PCS").

Michael's family moved into the boundaries of Cy–Fair's district in the summer of 1992. He enrolled as a sixth grader at a Cy–Fair elementary school for the 1992–93 school year. For the 1993–94 school year, Michael initially enrolled at his local junior high school in Cy–Fair's district. On November 4, 1993, Michael's parents unilaterally withdrew Michael from the Cy–Fair district and placed him at PCS.

Michael had been diagnosed with bi-polar disorder, severe depression, attention deficit hyperactivity disorder, and Tourette Syndrome. Due to these conditions, Michael was labeled as "other health impaired." Michael's parents contended that Cy–Fair did not provide Michael with an IEP which resulted in an adequate educational benefit to Michael. Due to this alleged deficiency, Michael's parents unilaterally withdrew him from the Cy–Fair district and placed him in PCS at their own expense for approximately four months.

---

**1.** In Texas, this group of people is known as the Admissions, Review, and Dismissal Committee

("ARD").

The hearing officer held that Michael received a free appropriate public education ("FAPE") during the 1992–93 school year and that Cy–Fair complied with the procedural requirements under the IDEA during the entire relevant period. Decision of the Hearing Officer, Texas Education Agency Record ("TEA Record") at 36, 44. The hearing officer, however, held that the IEPs developed for Michael on May 26, 1993 and October 4, 1993 were inappropriate because they failed to provide him with any such benefit. *Id.* at 38, 43. The hearing officer concluded that Michael's placement at PCS was proper, and that since Cy–Fair had failed to provide Michael with a FAPE, Michael's parents were entitled to reimbursement for the costs in placing him at PCS. *Id.* at 41, 44–45. Therefore, Cy–Fair was ordered to reimburse Michael's parents $15,978.20 for the PCS placement.

Cy–Fair filed this action as an appeal of the hearing officer's decision. Cy–Fair has challenged, *inter alia*, whether the hearing officer's decision to require reimbursement was correct and claims that this is resolved by determining whether Michael's IEPs developed on October 4, 1993 and November 18, 1993 were reasonably calculated to lead to educational progress for Michael. Michael's parents did not seek additional findings of fact or conclusions of law or appeal any portion of the hearing officer's decision.

### Discussion

■ Using a preponderance of the evidence standard, a district court must conduct a two-pronged inquiry in reviewing an administrative determination under the IDEA: (1) did the district comply with the IDEA procedures; and (2) was the child's IEP "reasonably calculated to enable the child to receive educational benefits." *Rowley,* 458 U.S. at 206–07, 102 S.Ct. at 3051. If these requirements are met, the district has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 207, 102 S.Ct. at 3051. Only the second prong is at issue in this case.

■ In measuring whether a handicapped child would receive educational benefits from an IEP, the reviewing court must examine whether the child has received the "basic floor of opportunity, or access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Id.* at 200–01, 102 S.Ct. at 3048. Although the school district need only provide "some educational benefit," that educational program must be meaningful. *Polk v. Central Susquehanna Inter. Unit 16,* 853 F.2d 171, 181 (3d Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989). The IEP must offer more than a trivial or *de minimis* educational benefit, *Oberti v. Board of Educ.,* 995 F.2d 1204, 1213 (3d Cir.1993), and it must be "likely to produce progress, not regression or trivial educational advancement." *Board of Educ. v. Diamond,* 808 F.2d 987, 991 (3d Cir.1986) (citing *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 636 (4th Cir.1985)). Nevertheless, there is no requirement that the school district maximize the educational benefit or potential to any child or spend "equal financial resources on the education of each child." *Rowley,* 458 U.S. at 200, 102 S.Ct. at 3047.

■ No specific substantive education standard is imposed on the state other than "educational instruction specifically designed to permit the child 'to benefit' from instruction." *Id.* at 188–89, 200, 102 S.Ct. at 3041–42, 3047–48. The Honorable Judge Steven Hughes recently pointed out that,

It is important to note at this point in the *Rowley* opinion, a footnote says the achievement of passing marks and advancement from grade to grade is one important factor in determining educational benefit to a disabled child who is being educated in the regular classroom setting. *Id.* [at 207] n. 28 [102 S.Ct. at 3051 n. 28]. This is the closest the Court comes to explaining "educational benefit." It is implied that other factors are to be considered and that "passing" is just one, albeit important, factor. The Court explicitly stated that they were not attempting "to establish any one test for determining the adequacy of educational benefits conferred upon all children covered by the Act." *Id.* at 202 [102 S.Ct. at 3049.]

*El Paso Indep. Sch. Dist. v. Robert W.*, 898 F.Supp. 442, 447 (W.D.Tex.1995).

The statute further establishes a preference for "mainstreaming" the handicapped student with nondisabled students in the least restrictive environment [2] consistent with their needs "to the maximum amount possible." 20 U.S.C. § 1412(5); *See also Oberti v. Board of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204 (3d Cir.1993).

If no suitable or "appropriate" public school is available, the school district must pay the costs of sending the child to an appropriate private school. *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C.Cir.1991), citing *School Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). *See also Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1158 (5th Cir.1986). If there is an appropriate public school program available, i.e. one reasonably calculated to enable the handicapped child to receive educational benefit, the school district need not consider private placement even though private school may be more appropriate or better able to serve the child. In other words, the question of the appropriateness of a public school's program is not determined comparatively. *Jenkins*, 935 F.2d at 305. If the school district's IEP provides an appropriate program, parents who have chosen to send their child to private school are responsible for the cost of that private placement. 20 U.S.C. § 1401(18, 19); *Doe v. Defendant I*, 898 F.2d 1186, 1192 (6th Cir.1990).

To obtain reimbursement for an alternative placement by parents who unilaterally remove their child from a public school placement, however, the parents must demonstrate that (1) the public school program is inappropriate and (2) the private placement is appropriate. *Burlington*, 471 U.S. at 373–74, 105 S.Ct. at 2004–05,[3] *Teague*, 999 F.2d 127, 131–32 (5th Cir.1993). Parents who unilaterally change their child's placement without consent of the state or local school officials, do so at their own financial risk. *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 14–16, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993) (citing *Burlington*, 471 U.S. at 372–74, 105 S.Ct. at 2004–05). "They are entitled to reimbursement *only* if a federal court concludes that the public placement violated IDEA, and that the private school placement was proper under the Act." *Florence County*, 510 U.S. at 15, 114 S.Ct. at 366 (emphasis in original). If the IEP was appropriate in the local public school district, the district court need not reach the issues of appropriateness of the private school placement and reimbursement. *Teague*, 999 F.2d at 132.

Since the hearing officer concluded that Cy–Fair complied with the procedural requirements of the IDEA and the parties have not challenged this, the Court need only consider the IEPs in effect during Michael's placement at PCS to determine whether he was receiving a FAPE. *Rowley*, 458 U.S. at 207–08, 102 S.Ct. at 3051–52; *Hall v. Shawnee Mission Sch. Dist.*, 856 F.Supp. 1521, 1528 (D.Kan.1994). Thus, the Court's initial focus is whether the IEPs developed for Michael at the time of his placement at PCS were reasonably calculated to enable Michael to receive educational benefits.

### Findings of Fact

Based on the administrative record developed before the hearing officer and the evidence presented before this Court, the Court finds that the October 4, 1993 and November 18, 1993 IEPs developed for Michael were reasonably calculated to enable Michael to gain educational benefits. In the evidentiary hearing before this Court, Cy–Fair presented Dr. Christine Salisbury, Ph.D. as an expert with respect to educating disabled children in public schools. Dr. Salisbury has a doctorate degree in special education, with a major in early childhood special education, from the University of

---

**2.** "Least restrictive environment" connotes not merely freedom from restraint but freedom to associate with family and with able-bodied peers. *Sherri A.D. v. Kirby*, 975 F.2d 193, 207 n. 23 (5th Cir.1992).

**3.** The Fifth Circuit construes the *Burlington* rule expansively and allows reimbursement when unilateral placement by a parent does not precisely meet statutory requirements. *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1161 (5th Cir.1986).

Wisconsin–Madison. Dr. Salisbury is currently a Senior Research Scientist and the Director at the Child and Family Studies Program at the Allegheny Singer Research Institute and is a Professor of Psychiatry (Psychology) at the Medical College of Pennsylvania and Hahnemann University in Pittsburgh, Pennsylvania. As her vita (Plaintiff's Exhibit 9) and testimony reveal, Dr. Salisbury has immense experience with the various issues presented in this case from academic, practical, and personal standpoints. In observing Dr. Salisbury's testimony in the evidentiary hearing, the Court finds her testimony to be fully credible, in spite of insinuations made by Michael's counsel, and to be of immense assistance to the Court in this case.

Although the Supreme Court has declined to provide any clearly delineated guideline for determining when a student is achieving "educational benefit," Dr. Salisbury posited that there are four factors which are indications of educational benefit. These four factors are: (1) an individualized program based on the student's assessment and performance; (2) that is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key stakeholders; and (4) there are demonstrated positive benefits both academically and non-academically. In reviewing the October 4, 1993 IEP and the November 18, 1993 IEP (to the extent possible), with this framework in mind, the Court finds that the IEPs were reasonably calculated to confer educational benefit on Michael.

In order to analyze the appropriateness of the October and November 1993 IEPs, the IEP in place when Michael started attending junior high for the 1993–94 school year needs to be considered. This initial IEP for the 1993–94 school year was developed at an ARD committee meeting on May 26, 1993 at Michael's previous elementary school. Respondent's Exhibit # 9 before the hearing officer is the May 26, 1993 ARD committee report. TEA Record at 1436. The ARD determined that Michael could be placed in

regular education classes at his new junior high for the following school year. The IEP that was developed included support services for the regular education classes, such as a discipline contingency plan, a behavioral intervention plan, psychological services, a tracking teacher to monitor his progress, and a handpicked team of teachers who were to receive training to deal with Michael and his disabilities. Additionally, a full set of textbooks were to be sent to Michael's home for use during the year and a detailed Discipline Contingency Plan (TEA Record at 1442) was developed for the teachers to utilize in dealing with Michael's behavior. Michael's parents attended this ARD and signed the report and denoted their agreement with the IEP.

The October 4, 1993 IEP was developed at an ARD which was called in response to difficulties with Michael. By this time, Michael had already received a progress report for the first half of the first six weeks. Michael was passing all but one class and received at least "satisfactory" marks in conduct in all but two of his classes. TEA Record at 1630 (Respondent's Exhibit # 52). However, the majority of the teachers indicated that Michael was having a problem turning in completed work. *Id.*

The October IEP developed by Michael's ARD was individualized in response to Michael's difficulties which were mainly behavioral problems and completing assignments in his mainstream classes. The October IEP required that Michael attend adaptive behavior ("AB")[4] classes, rather than mainstream, for three of his classes. It was also determined that Michael was eligible for content master classes when necessary. Additionally, the discipline contingency plan remained in place with the addition of the option for teachers to send Michael to a discipline management class for the remainder of the class period, as opposed to an emergency removal from class, when his behavior escalated. These modifications were made to the IEP in an effort to accommodate and deal with Michael's behavior problems while continuing to

---

**4.** Adaptive Behavior classes are self-contained classes which utilize a point structure which enables the student to gain rewards throughout

the class period by exhibiting appropriate behavior.

keep him in mainstream classes to the greatest extent possible. This satisfies the first two prongs Dr. Salisbury identified as being indicators of educational benefit.

The ARD was attended by all the key "stakeholders" in Michael's education—his parents, the chairperson of the special education department at Michael's school, a psychologist from the district, the educational diagnostician at Michael's school, a counsel from Michael's school, an assistant principal from Michael's school, and Michael's special education teacher from the adaptive behavior program at his school who also served as his tracking teacher. Michael's parents even signed off on the ARD report denoting their agreement with the ARD and IEP. TEA Record at 1627. The IEP was developed and approved by a group of professionals in this area of education and Michael's parents. Furthermore, implementation of the IEP required that the ARD committee members and the teachers in the school work together in order to accommodate Michael's behavior problems while educating him. The Court finds that the October IEP satisfied the third factor that Dr. Salisbury identified as a sign of educational benefit.

The next factor that needs to be addressed in determining the appropriateness of the October IEP is whether there was any demonstrated positive benefits from the IEP. Michael's parents unilaterally removed Michael from the Cy–Fair district on November 4, 1993, which is only a month after the development of the IEP. Therefore, the full potential effect of the IEP cannot be determined. Michael, however, continued to be able to attend lunch and pass in the hallways between classes without being escorted by school staff. For the first six weeks, Michael received passing grades in all but one class. TEA Record at 1632 (Respondent's Exhibit # 54). On October 26, 1993, Michael received his progress report for the first half of the second six weeks. The progress report reflects that he was failing all but one of his classes at the time. TEA Record at 1631 (Respondent's Exhibit # 53). However,

most of the teachers indicated that the low grade was due to missing grades because assignments were not turned in. By the time Michael was withdrawn from the district, he was passing four of his classes and was very close to receiving passing grades in two additional classes. TEA Record at 1632 (Respondent's Exhibit # 54). Michael's passing classes and ability to still proceed through the halls and attend lunch unsupervised are signs of positive benefits from his IEP.[5] Based on the foregoing discussion of the October IEP, the Court finds that the IEP was reasonably calculated to confer educational benefit on Michael.

After Michael's withdrawal from the Cy–Fair district on November 4, 1993, his ARD committee met on November 18, 1993, at Michael's parents' request, to review his IEP. The ARD determined that the IEP should be modified slightly, but did not agree with Michael's parents' request to be reimbursed for his placement at PCS because the ARD felt that the district could provide him with a FAPE in a less restrictive environment than PCS. The November IEP modified the October IEP by allowing Michael to not suit-up for his physical education class, the implementation of a social behavior curriculum, and offering the services of the Family School Preservation Team to Michael and his family. Those present at the November ARD meeting were essentially the same as those at the October ARD meeting with the addition of Michael's attorney and Cy–Fair's attorney. Michael's parents did not agree with the decisions reached at the November ARD meeting. The IEP developed at the ARD, however, was individualized to address the needs of Michael in the least restrictive environment and was developed and was to be implemented in a collaborative manner by the staff at Michael's school. Since the IEP was not actually applied since Michael had already withdrawn from the district, there is no indication of any positive benefits from the IEP. Since three of the indicators of educational benefit are

5. The Court is cognizant of the increase in disciplinary incidents with Michael during this period. Michael's passing all his classes and not having discipline problems would indicate even greater positive benefits. Yet, the IDEA merely requires some educational benefit, not the maximum.

present with respect to the November IEP and the November IEP was similar to the October IEP which did produce positive benefits, the Court finds that the November IEP was reasonably calculated to produce educational benefit for Michael.

### Conclusion

In accordance with the foregoing, the Court concludes that the IEPs in effect when Michael was placed at PCS were in compliance with the requirements of the IDEA. Therefore, the hearing officer's determination that the IEPs were inappropriate and Cy–Fair should reimburse Michael's parents for the placement costs at PCS should be reversed.

### ORDER ON MOTIONS

Pending before the Court are defendant Michael F.'s, by next of friend, Mr. and Mrs. F., ("Michael") Motion for a New Trial and/or Motion to Alter or Amend the Judgment (Instrument # 69), plaintiff Cypress–Fairbanks Independent School District's ("Cy–Fair") Bill of Costs (Instrument # 70), and Michael's Motion to Extend Time for Response to Plaintiff's Bill of Costs (Instrument # 72). After considering the record in this case, the submissions of the parties, and the relevant law, the Court concludes that Michael's motion for a new trial and to alter or amend the judgment should be denied, Michael's motion to extend time for response to the bill of costs should be granted, and Cy–Fair's bill of costs should be awarded except for the amount requested pursuant to 28 U.S.C. § 1927.

On December 12, 1995, the Court issued its Finding of Fact and Conclusions of Law (Instrument # 67) and Order (Instrument # 68) reversing the hearing officer's decision which had required Cy–Fair to reimburse Michael's parents for his unilateral placement at Provo Canyon School in Provo, Utah. Pursuant to Fed.R.Civ.P. 54(d)(1), the Court included an award of costs to Cy–Fair in its Order. *See* Instrument # 68.

■ Michael has filed a motion for a new trial pursuant to Fed.R.Civ.P. 59. In this motion, Michael first urges the Court to grant a new trial because the decision is against the weight of the evidence. In support of this, Michael mainly reargues the evidence favorable to his side by focusing on numbers (i.e. number of behavioral incidents and class grades). The authority to grant a new trial is confided almost entirely to the exercise of discretion on the part of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190–91, 66 L.Ed.2d 193 (1980). The Court concludes that Michael has not shown that the Court's conclusions were against the weight of the evidence. Rather, it appears that Michael is merely rearguing the same issues already considered by the Court because he is dissatisfied with the result. Therefore, the motion for a new trial should be denied.

■ Alternatively, Michael urges the Court to amend the judgment to not award costs to Cy–Fair because the Individuals with Disabilities Education Act ("IDEA") does not provide for an award of costs and to otherwise allow for such an award will have a chilling effect on parents' decisions to bring such suits. Although the IDEA does not provide for the award of costs to a prevailing party, the IDEA does not bar such an award. Federal Rule of Civil Procedure 54(d)(1) provides that "[e]xcept when express provision therefore is made either in a statute of the United States or in these rules, costs other than attorney's fees **shall be allowed as** of course to the prevailing party unless the court otherwise directs...." Fed.R.Civ.P. 54(d)(1) (emphasis added). Since Cy–Fair was to be awarded costs as a matter of course, the Court finds that the award of costs in the Order of December 12, 1995 (Instrument # 68) was proper and Michael's motion to alter or amend the order to delete the award should be denied.

On December 22, 1995, Cy–Fair filed its Bill of Costs (Instrument # 70). Cy–Fair has provided documentation with its bill of costs which itemizes $7,960.05 which it contends are recoverable costs under 28 U.S.C. § 1920. In its bill of costs, Cy–Fair has included a request that the Court award it $1,190 from Michael's attorney under 28 U.S.C. § 1927 for expenses it incurred in responding to his vexatious actions.

On January 23, 1995, Michael filed a motion seeking an extension of time in which to file his response to Cy–Fair's bill of costs. Michael's counsel was ill during January 1996 and was unable to timely file a response to the bill of costs. Since Michael's response was filed prior to the Court considering the bill of costs and good cause has been shown, Michael's motion to extend time should be granted.

In response to Cy–Fair's bill of costs, Michael has objected to every item listed by Cy–Fair. Therefore, the Court will proceed to consider the appropriateness of each item of cost sought by Cy–Fair. The first item is the recovery of the $120.00 filing fee paid to the Clerk. Section 1920(1) of Title 28 of the United States Code specifically provides for the recovery of fees of the clerk. Therefore, Cy–Fair is entitled to recover the $120.00 filing fee.

The next item on the bill of costs is $425.80 incurred as fees for serving the summons and complaint on the defendants and for serving summons to Susan Mitchell, Sandra Reed, Deena Baskin, and Carolyn Brady. Although such fees are recoverable under section 1920(1), Michael has objected to the amount as excessive since Cy–Fair used private process servers and served both Michael's parents and Michael's attorney. The expenses of using private process serves is a taxable cost. *Alflex Corp. v. Underwriters Lab., Inc.*, 914 F.2d 175, 178 (9th Cir.1990), *cert. denied,* 502 U.S. 812, 112 S.Ct. 61, 116 L.Ed.2d 36 (1991). Therefore, Cy–Fair is entitled to recover the $425.80 as taxable costs.

The next item on the bill of costs is $1,319.00 as witness fees for six witnesses. This amount is made up of the $40.00 witness fee to each witness ($240.00), $75.00 subsistence fee for Dr. Carol Salisbury who was from Pennsylvania, and $1004 for airfare for Dr. Salisbury to fly round trip between Pittsburgh, Pennsylvania and Houston, Texas. Witness fees are taxable costs under section 1920(3). Michael, however, argues that none of the witnesses were necessary and Cy–Fair could have used the depositions of three of the witnesses at trial rather than call them as live witnesses. Michael also argues that the

$1004.00 airfare is unreasonably high because his counsel has called the same airline and determined that the seven day advance airfare from Pittsburgh to Houston is between $289.00 and $385.00. Cy–Fair has provided an affidavit from its attorney wherein she states that Michael's counsel indicated that Michael would not agree to the use of deposition evidence at the hearing before this Court. Michael has failed to cite any authority for the requirement that airfare is only taxable if the ticket is purchased at least seven days in advance. The Court finds that the witnesses were necessary and the $1,319.00 is recoverable as taxable costs.

The next item on Cy–Fair's bill of costs is $1,247.70 for copies necessarily used in the case under section 1920(4). Michael has objected to the number of copies and the per page cost sought by Cy–Fair. Cy–Fair made three copies of all its filings (two for the Court and one for Michael) and one copy of all of Michael's filings. Additionally, Cy–Fair found it necessary to provide copies of the relevant portions of the transcript generated before the hearing officer to two of its witnesses. Cy–Fair made one copy of each of the depositions for its use at trial. This totaled 8,318 copied pages, which Cy–Fair claims cost $1,247.70 at a fair and reasonable amount of $.15 per page. The Court finds that these copies were necessary for Cy–Fair to make in this case and $.15 per page is a reasonable copy cost. Therefore, Cy–Fair is entitled to recover $1,247.70 as its copy costs under section 1920(4).

The next item contained on Cy–Fair's bill of costs is $3,657.55 for costs incident to taking four depositions. Section 1920(2) allows for the recovery of costs for stenographic transcriptions necessarily obtained for use in the case. Michael's objection to this item is that the depositions were not necessary in this case. A deposition is taxable as a cost so long as "the taking of the deposition is shown to have been reasonably necessary in the light of facts known to counsel at the time it was taken." *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir.1982). The cost of a deposition may be taxed even if it is used

just to structure questioning at trial. *Soderstrum v. Town of Grand Isle,* 925 F.2d 135, 141 (5th Cir.1991). Cy–Fair claims that even though Michael refused to allow the use of these depositions at trial, the depositions were necessary to have available at trial for witness examination purposes. The Court finds that the depositions were necessary in this trial and are recoverable as taxable costs.

 The final item listed on Cy–Fair's bill of costs is $1,190.00 as attorney's fees against Michael's counsel under 28 U.S.C. § 1927. The decision to award attorney's fees under 28 U.S.C. § 1927 is committed to the Court's discretion. *Thomas v. Capital Sec. Servs., Inc.,* 812 F.2d 984, 990 (5th Cir. 1987). Cy–Fair has argued that Michael's attorney displayed reckless disregard of his duties as an officer of the Court in making frivolous arguments throughout discovery in this case and by continued assertion of a counter-claim for attorney's fees. Section 1927 is to be strictly construed, and sanctions are not appropriate unless the attorney is shown to have acted in bad faith, with improper motive, or with a reckless disregard of the duty owed to the Court. *Baulch v. Johns,* 70 F.3d 813, 817 (5th Cir.1995). The Court concludes that Michael's counsel's actions were not so reckless as to warrant sanctions in this case. Cy–Fair's request for attorney's fees under 28 U.S.C. § 1927 should be denied.

In accordance with the foregoing, the Court

**ORDERS** that Michael's motion for a new trial and/or motion to alter or amend the judgment is **DENIED;** and

**ORDERS** that Michael's motion to extend time for response to Cy–Fair's bill of costs is **GRANTED;** and

**ORDERS** that Cy–Fair shall recover $6,770.05 from Michael as its costs of court.

All other relief not granted herein is denied.