**Andrew JENKINS, Officially, Superintendent D.C. Public Schools, Appellant,**

v.

**Theresa M. SQUILLACOTE, et al., Appellees.**

**No. 90–7172.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1991.

Decided June 7, 1991.

Rehearing Denied July 30, 1991.

**304**

Susan S. McDonald, Asst. Corp. Counsel, District of Columbia, with whom John Payton, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, Washington, D.C., for appellant.

Matthew B. Bogin, with whom Michael J. Eig was on the brief, Washington, D.C., for appellees.

Before EDWARDS, BUCKLEY and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The appellant, Dr. Andrew Jenkins, Superintendent of the District of Columbia Public Schools, appeals a ruling by the District Court holding that his law suit under the Individuals with Disabilities Education Act has been rendered moot by the passage of the school year at issue. *See Jenkins v. Squillacote*, Civ. Action No. 89-2542, 1990 WL 157876 (D.D.C. Oct. 5, 1990). We reverse the District Court on the grounds that the wrong alleged—misapplication of the legal standard governing the notice that public school systems must give parents before altering the educational plans for their children—is "capable of repetition, yet evading review."

## I. BACKGROUND

### A. *Statutory Framework*

As a recipient of federal funds under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 *et seq.* (West 1990 & Supp.1991),[1] the District of Columbia ("the District") is required to provide all disabled children within its jurisdiction with "a free appropriate public education." *See* 20 U.S.C.A. § 1412(1) (West Supp. 1991). Under the statute, the District is obligated to devise Individualized Education Programs ("IEPs") for each eligible child, mapping out specific educational

---

**1.** This action was originally brought under the Education of the Handicapped Act ("EHA"). The name of the statute was changed in 1990 to the Individuals with Disabilities Education Act ("IDEA"). *See* Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, § 901(a)(1), 104 Stat. 1103, 1142 (1990).

goals and requirements in light of the child's disabilities and matching the child with a school capable of fulfilling those needs. *See* 20 U.S.C.A. §§ 1412(4), 1414(a)(5), 1401(a)(20) (West Supp.1991). If no suitable public school is available, the District must pay the costs of sending the child to an appropriate private school, *see School Comm. of the Town of Burlington, Mass. v. Department of Educ. of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985) (*"Town of Burlington"*); however, if there is an "appropriate" public school program available, *i.e.*, one " 'reasonably calculated to enable the child to receive educational benefits,' " the District need not consider private placement, even though a private school might be *more* appropriate or better able to serve the child, *see Kerkam v. Superintendent, D.C. Public Schools*, 931 F.2d 84, 86 (D.C. Cir.1991) (quoting *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). In short, "the inquiry as to the appropriateness of the State's program is not comparative." *Id.* at 88; *see also Roland M. v. Concord School Comm.*, 910 F.2d 983, 992–93 (1st Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

Any time the District devises or alters an IEP, it is required by the statute to provide advance notice to the parents of the affected child. *See* 20 U.S.C. § 1415(b)(1)(C) (1988). By regulation, this notice must explain the proposed action and the reasons underlying it. *See* 34 C.F.R. § 300.505(a) (1990). If a parent disagrees with the IEP, she or he may demand a "due process hearing" before an outside examiner, during which the parent may contest the proposed action. *See* 20 U.S.C. § 1415(b)(2) (1988). "Any party aggrieved by the findings and decision" of the hearing examiner may seek review in district court. *See* 20 U.S.C. § 1415(e)(2) (1988).

## B. *Factual Background*

Karl Stand is a disabled seven-year-old child living in the District of Columbia and is eligible for "a free appropriate public education" under the IDEA. After observing Karl in a laboratory classroom and reviewing his medical and educational records, the District devised an IEP which stated that Karl was "multiply handicapped" and that he should be placed in a school where he could receive both occupational and physical therapy in addition to educational programs geared toward his learning disability. *See* IEP (Apr. 7, 1989), *reprinted in* Appendix ("App.") 16. Four days later, the District advised Karl's parents that it intended to assign Karl to the Sharpe Health School, a public school that specializes in the education of children with multiple handicaps. *See* Notice of Proposed Change in Educational Placement (Apr. 11, 1989), *reprinted in* App. 44. Karl's parents acknowledge that Sharpe Health School is the only public school capable of providing the physical therapy Karl needs. *See* Brief for Appellees at 1 n. 3, 17.

Karl's parents, who preferred that Karl attend Ivymount, a private school, objected to the proposed placement and demanded a hearing. At the hearing on June 28, 1989, the examiner ruled that the notice provided by the District to Karl's parents was deficient because it did "not contain an explanation of how DCPS [D.C. Public Schools] designated Karl Stand as multiply handicapped," and because it did "not set out why Karl Stand cannot be placed in a program solely for one of the impairments" rather than a program geared for children with multiple handicaps. *See* Hearing Officer's Determination (July 6, 1989), *reprinted in* App. 73, 77. The hearing examiner then ordered the District to provide Karl's parents with "a corrected notice." *Id.*

Two days later, the District provided Karl's parents with a revised placement notice. In it, the District explained what it meant by "multiply handicapped" and why it assigned Karl to the Sharpe school over Ivymount. *See* Notice of Proposed Change in Educational Placement (June 30, 1989) ("Ivymount was rejected because of the amount of travel time required from Karl's home. The D.C.P.S. program is also more likely to provide Karl an opportunity for mainstreaming."), *reprinted in* App. 57,

58. Karl's parents again objected and sought a second hearing.

At the new hearing, the examiner again found the District's notice deficient under the statute. According to the examiner, "the notice does not specify which problems are the result of which handicapping condition[,] thus obscuring why Karl could not be placed in a program solely for one of the impairments." *See* Hearing Officer's Determination (Aug. 11, 1989), *reprinted in* App. 79, 84. Because the commencement of the school year was then imminent, the hearing examiner simply ordered Karl's placement at Ivymount for the 1989–1990 school year rather than permitting the District another chance to perfect notice of its chosen placement. *Id., reprinted in* App. 87.

The District, in the name of Andrew Jenkins, Superintendent of Schools, filed this action in District Court on September 11, 1989, seeking review of the hearing officer's determinations concerning the sufficiency of the notice provided to Karl's parents. The District's complaint included two counts: the first alleged that the notice that had been provided was entirely sufficient and that the hearing officer's finding to the contrary was legally incorrect; the second alleged that "any defect with DCPS' Notice and Revised Notice was non-prejudicial and should not have precluded DCPS from moving forward" with its proposed placement. *See* Complaint ¶¶ 24–27, *reprinted in* App. 8, 12.

As the pleadings and argument have made clear, this case is not simply about where Karl Stand would attend school for the 1989–1990 school year, but rather about what sort of legal standard the District must meet in providing notice to Karl's parents, and to other parents as well, concerning a proposed change in the educational placement of a handicapped child. The District appears to take the view that it need only provide parents with a summary explanation of its reasoning and conclusions in making a placement decision, deferring a more exhaustive explanation until any hearing on the merits of the decision; the hearing examiner, however, has consistently demanded a more detailed justification of the decision in the initial notice itself.[2]

On September 28, 1989, Karl's parents filed a motion to dismiss the District's action. They alleged that the case was moot because the District's complaint attacked only the hearing officer's finding of inadequate notice without expressly refuting his remedial finding that Ivymount represented an "appropriate" placement for Karl. The District answered that motion on December 7, 1989, pointing out that its complaint attacked the basis of the hearing officer's rejection of the District's chosen placement and that "whether or not plaintiff appealed the finding of Ivymount's appropriateness is irrelevant." *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment, *Jenkins v. Squillacote*, Civ. Action No. 89–2542 (D.D.C. Oct. 5, 1990).

The District Court held the matter under advisement for 10 months. On October 5, 1990, the court held that the case was moot, not on the grounds suggested by the appellees, but rather because, by the time of the court's ruling, the 1989–1990 school year had passed. *See Jenkins v. Squillacote*, Civ. Action No. 89–2542, mem. order at 2 (D.D.C. Oct. 5, 1990). The District then took this appeal.

## II. ANALYSIS

▮ The District contends that this case is not moot, despite the passing of the 1989–1990 school year at issue in the hear-

---

**2.** *Compare* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment ("The purpose of the Notice is merely to inform the parent as to how DCPS views the child and into what program he is to be placed according to his specific needs. The Notice is not the vehicle for a long explanation as to the child's handicapping condition."), *Jenkins v. Squillacote*, Civ. Action No. 89–2542 (D.D.C. Oct. 5, 1990) *with* Hearing Transcript (June 28, 1989) (hearing officer conceding that he "has in the past held D.C. to a very strict and high standard as to their notices"), *reprinted in* App. 166.

ing examiner's placement order, for several reasons: (1) a favorable court ruling assertedly would enable the District to seek reimbursement of tuition funds it has already spent under the order; (2) the examiner's order has "collateral consequences" that make it more difficult for the District to place Karl in another school; and (3) the examiner's erroneous ruling is of a nature that is "capable of repetition, yet evading review." We find the third of these arguments to be dispositive.[3]

■ This court recently examined the issue of mootness in *Clarke v. United States*, 915 F.2d 699 (D.C.Cir.1990) (*en banc* ). In considering the doctrinal exception to mootness for cases challenging short-term actions that are "capable of repetition, yet evading review," we stated:

> In order to fit the case into one of the "exceptional situations" to which this doctrine applies, [the appellant] ... must demonstrate that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again."

*Id.* at 704 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)); *see also The Washington Post v. Robinson*, 935 F.2d 282, 286 (D.C.Cir.1991).

On the first prong of this test, there can be no doubt that a one-year placement or-

der under the IDEA is, by its nature, "too short [in duration] to be fully litigated prior to its ... expiration." *See Honig v. Doe*, 484 U.S. 305, 322–23, 108 S.Ct. 592, 603–04, 98 L.Ed.2d 686 (1988); *id.* at 333, 108 S.Ct. at 609 (Scalia, J., dissenting); *DeVries ex rel. DeBlaay v. Spillane*, 853 F.2d 264, 268 (4th Cir.1988) ("EHA cases are classic cases for application of the 'capable of repetition, yet evading review' rule"); *Rettig v. Kent City School Dist.*, 788 F.2d 328, 330 (6th Cir.), *cert. denied*, 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 711 (1986); *cf. Defenders of Wildlife, Inc. v. Endangered Species Scientific Auth.*, 659 F.2d 168, 175 (D.C.Cir.) (challenge to Government bobcat export limits for 1979–1980 season not moot, notwithstanding passage of that season, because such annual orders are "capable of repetition, yet evading review"), *cert. denied sub nom. International Ass'n of Fish & Wildlife Agencies v. Defenders of Wildlife, Inc.*, 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981). As the Fifth Circuit has noted:

> A placement and an IEP cover an academic year, a nine[-]month period. The Supreme Court has observed that administrative and judicial review of an IEP is "ponderous" and usually will not be complete until a year after the IEP has expired.

*Daniel R. v. State Bd. of Educ.*, 874 F.2d 1036, 1041 (5th Cir.1989) (quoting *Town of Burlington*, 471 U.S. at 370, 105 S.Ct. at 2003); *see also Roland M.*, 910 F.2d at

---

3. The District's first argument—that the case is not moot because a ruling in its favor might enable it to recover the tuition funds it has spent under the examiner's order sending Karl to the private Ivymount school for the 1989–1990 school year—is specious. It is true that the statute leaves matters of remedy squarely in the "broad discretion" of the trial courts. *See Town of Burlington*, 471 U.S. at 369, 105 S.Ct. at 2002; *see also* 20 U.S.C. § 1415(e)(2) (1988) (trial court "shall grant such relief as the court determines is appropriate"). At the same time, the Supreme Court has emphasized that "relief [under the IDEA] is to be 'appropriate' in light of the purpose of the Act." *Town of Burlington*, 471 U.S. at 369, 105 S.Ct. at 2002. The statute simply does not create symmetrical obligations; it imposes a duty only upon school systems to provide a "free appropriate public education"

and provides a remedy to parents for the denial of that entitlement. It would be absurd to imagine a trial court ordering parents to reimburse a school system for the costs of a hearing examiner's erroneous placement of their child, and any such order would clearly be an abuse of discretion. *See Town of Burlington v. Department of Educ. for the Commonwealth of Mass.*, 736 F.2d 773, 800 (1st Cir.1984) ("Retroactive reimbursement by parents is not 'appropriate' relief within the meaning of § 1415(e)(2) where they relied on and implemented a state administrative decision in their favor ordering a particular placement."), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). We therefore reject the District's suggestion that it could secure reimbursement of the funds paid for the 1989–1990 school year.

1000 ("As the case before us aptly illustrates, placement disputes [under the IDEA] may take years to wind their way through the administrative/judicial labyrinth.").

The real issue, then, is whether there is a "reasonable expectation" that the District will again be aggrieved by a similar application of the IDEA's notice requirements. At oral argument, both litigants readily agreed that the question of the degree of specificity required of the District in providing notice to parents under the IDEA is a recurring one. Furthermore, it is reasonably likely to be a recurring legal question with respect to the District's educational plans for the very pupil whose parents are now before this court. Given that Karl Stand is only seven years old and that he will remain eligible for public educational services under the IDEA for at least the next 11 years, we find a "reasonable expectation" that the District may again attempt to place him in another school and find itself stymied on grounds that its notice falls short of the standard demanded by a hearing officer. *Cf. Honig*, 484 U.S. at 318–23, 108 S.Ct. at 601–04; *Abney ex rel. Kantor v. District of Columbia*, 849 F.2d 1491, 1495 (D.C.Cir.1988); *Daniel R.*, 874 F.2d at 1041 ("Given the parties' irreconcilable views on [the IDEA's requirements] ..., whether and to what extent to mainstream Daniel will be an issue every time ... [the school district] prepares a new placement or IEP or proposes to change an existing one. The parties have a reasonable expectation of confronting this controversy every year that Daniel is eligible for public education."); *Rettig*, 788 F.2d at 330.

We therefore find that the District Court erred in concluding that the District's challenge is moot. If the District is unable as a practical matter to seek meaningful review of the hearing examiner's application of the statutory notice provision, it has no choice but to conform its notice to a standard that it considers legally groundless. Although we have no view on the merits of the District's claim, such a recourse could not be reconciled with Congress' decision in the statute to give a right of judicial review to "[a]ny party aggrieved" by a hearing officer's determination.

## III. CONCLUSION

We therefore reverse the order of the District Court finding this case moot and remand for consideration of the merits of the District's claims concerning the sufficiency of the notice it provided the parents of Karl Stand.

*So ordered.*