# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 21, 2005          Decided May 31, 2005

No. 03-5345

SPIRIT OF THE SAGE COUNCIL, ET AL.,
APPELLEES

v.

GALE A. NORTON, SECRETARY, US DEPARTMENT OF THE
INTERIOR, ET AL.,
APPELLEES

COALITION FOR HABITAT CONSERVATION, ET AL.,
INTERVENORS

---

Consolidated with
04-5262, 04-5263, 04-5264

---

Appeals from the United States District Court
for the District of Columbia
(No. 98cv01873)

---

*Ronald M. Spritzer*, Attorney, U.S. Department of Justice, argued the cause for federal appellants. With him on the briefs was *Andrew C. Mergen*, Attorney.

*Robert D. Thornton* argued the cause for intervenors. With

him on the briefs were *John J. Flynn, III*, *Steven P. Quarles*, *J. Michael Klise*, and *Thomas R. Lundquist*, *Benjamin S. Sharp*, *Guy R. Martin*, and *Donald C. Baur*.

*Eric R. Glitzenstein* argued the cause for appellees The Humane Society of the United States, et al. With him on the brief was *Katherine A. Meyer*.

Before: GINSBURG, *Chief Judge*, and SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The Spirit of the Sage Council, et al., sued the Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS), challenging the Services' jointly-issued "No Surprises Rule" on both substantive and procedural grounds. When the FWS subsequently promulgated the closely related "Permit Revocation Rule," the Council amended its complaint to contest that Rule as well.

In the orders under review, the district court held the FWS had not provided an adequate opportunity for the public to comment upon the Permit Revocation Rule, as required by the Administrative Procedure Act, 5 U.S.C. § 553. Although the district court did not reach the merits of the Council's challenge to the No Surprises Rule, the court held that Rule was "sufficiently intertwined with the [Permit Revocation Rule] that it must also be remanded to the agency for consideration as a whole." *Spirit of the Sage Council, et al. v. Norton*, 294 F. Supp. 2d 67, 91 (2003). The district court further ordered the FWS and the NMFS to complete the proceedings on remand within one year and enjoined the Services from applying the No Surprises Rule in the meantime.

On appeal the Services do not contest the district court's conclusion that the Permit Revocation Rule was procedurally defective. Rather, they argue the interim suspension of the No Surprises Rule and the one-year deadline for repromulgation of the Permit Revocation Rule exceeded the court's authority under the APA.

The Council contends these appeals are moot because the Services have fully complied with the district court's orders. We agree with the Council and therefore dismiss these appeals and vacate the orders under review pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950).

## I. Background

In 1982 the Congress amended the Endangered Species Act to authorize the Secretaries of the Interior and of Commerce, who delegated this authority to the FWS and the NMFS, respectively, to permit the "taking [of an endangered or threatened species] otherwise prohibited by [the Act] if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B). An applicant for a so-called incidental take permit (ITP) must submit a habitat conservation plan (HCP) demonstrating to the satisfaction of the Secretary that:

> (i) the taking will be incidental; (ii) the applicant will, to the maximum extent practicable, minimize and mitigate the impacts of such taking; (iii) the applicant will ensure that adequate funding for the [HCP] will be provided; [and] (iv) the taking will not appreciably reduce the likelihood of the survival and recovery of the species in the wild[.]

*Id*.

In the first decade this procedure was available the Services issued only 14 ITPs. Hoping to encourage more private landowners to enter into HCPs, the Services developed their "No Surprises" policy, which provided that

> under no circumstances, including extraordinary circumstances, shall an HCP permittee who is abiding by the terms of their [sic] HCP be required to provide a greater financial commitment or accept additional land use restrictions on property available for economic use or development.

Notice of Availability of Final Handbook for Habitat Conservation Planning and Incidental Take Permitting Process, 61 Fed. Reg. 63,854, 63,857 (Dec. 2, 1996).

The new policy had the intended effect. "[B]y September 30, 1998, the Services had issued 243 incidental take permits, and [as of March 1999] approximately 200 HCPs [were] under development." Notice of Availability of a Draft Addendum to the Final Handbook for Habitat Conservation Planning and Incidental Take Permitting Process, 64 Fed. Reg. 11,485 (March 9, 1999). The new policy was later codified as the No Surprises Rule. *See* 63 Fed. Reg. 8859 (Feb. 23, 1998).

The Council brought suit in July 1998, claiming, among other things, the No Surprises Rule violates the ESA "[b]y precluding the Services from making changes to ITPs/HCPs which may be necessary to ensure the survival and/or recovery of endangered and threatened species." The Coalition for Habitat Conservation and other organizations representing permit-holders intervened in support of the Services.

In June 1999, while this litigation was underway, the FWS adopted the Permit Revocation Rule, 64 Fed. Reg. 32,706 (June

17, 1999), which provides that an ITP containing an assurance of no surprises may be revoked in the event of unforeseen circumstances that will "appreciably reduce the likelihood of the survival and recovery of the species in the wild," 16 U.S.C. § 1539(a)(2)(B)(iv), if the Service is not otherwise able to avert the jeopardy to the species, 50 C.F.R. §§ 17.22(b)(8) & 17.32(b)(8). Although the NMFS did not adopt a similar rule, it joined the FWS in arguing before the district court that the Permit Revocation Rule was not a modification of the No Surprises Rule, but a mere clarification of how "the Services' obligations under ... the ESA would be applied to revoke an HCP permit." Federal Defendants' Reply Memorandum In Support of Cross-motion for Summary Judgment at 9. The Council then amended its complaint to challenge the Permit Revocation Rule as well.

After rejecting the Services' arguments that the Council lacked standing to bring a facial challenge to the No Surprises Rule and that the issue was not ripe for review, the court went on to address, and to uphold on the merits, the Council's procedural claim that the FWS had failed to provide proper notice and an adequate opportunity for public comment before promulgating the Permit Revocation Rule, as required by § 553 of the APA. The district court accordingly vacated and remanded the Permit Revocation Rule, which decision the Services have not appealed.

Without purporting to reach the Council's substantive challenge to the No Surprises Rule, the district court further concluded that Rule was "sufficiently intertwined with the [Permit Revocation Rule] that it must also be remanded to the agency for consideration as a whole with the [Permit Revocation Rule]." 294 F. Supp. 2d at 91. The district court later issued an order requiring the Services to complete "all proceedings remanded by the Court[]" within one year of the date on which

they were remanded and, "pending completion of the proceeding on remand ... [to] refrain from approving new ITPs or related documents containing 'No Surprise' assurances."

After this court denied the Services' motion for a stay pending appeal, the FWS solicited public comment on both the Permit Revocation Rule and its relationship to the No Surprises Rule, as ordered by the district court. *See* Proposed Rule, Endangered Species Act Incidental Take Permit Revocation Regulations, 69 Fed. Reg. 29,681, 29,683 (May 25, 2004). On December 10, 2004 the FWS repromulgated the Permit Revocation Rule without substantial change. *See* Final Rule, 69 Fed. Reg. 71,723.

## II. Analysis

The Council argues these appeals are moot because it is now "impossible for the court to grant any effectual relief whatever" to the appellants, *Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939, 950 (D.C. Cir. 2005); that is, having adhered to the procedure required by the district court and repromulgated the Permit Revocation Rule, the Services are no longer prohibited from issuing ITPs containing no-surprise assurances.

The Services, on the other hand, maintain this court can still grant effective relief because "the challenged order has ongoing effects" upon the further proceedings required to resolve this case. In the alternative the Services argue these appeals are not moot because the harm of which they complain is one of those "capable of repetition, yet evading review." *So. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

As for continuing effects, we note again that the Services do not challenge the portion of the district court's order vacating

and remanding the Permit Revocation Rule; we therefore do not consider whether allowing the FWS to recall the new version of that Rule would provide it any redress.[*] Insofar as the district court suspended and remanded the No Surprises Rule and set a deadline for the completion of the proceedings on remand, its orders were the functional equivalent of a preliminary injunction designed to expedite the court's further review of the No Surprises Rule while preserving the status quo in the interim. And "an appeal from an order granting a preliminary injunction becomes moot when, because of the defendant's compliance or some other change in circumstances, nothing remains to be enjoined through a permanent injunction." *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 421 (D.C. Cir. 2005). That is precisely the situation here; the Services have completed the required rulemaking. The orders under review require nothing more of them, and hence they have resumed issuing ITPs containing no-surprise assurances.

The Services argue the district court's ruling nonetheless has a continuing effect because it "provides [the Council] with an opening to argue that the new comments [concerning the proposed repromulgation of the No Surprises Rule] -- and FWS's responses or lack thereof -- should be considered in the district court's ongoing review of the [No Surprises] Rule." The Council, however, has not argued here, and at oral argument

---

[*] The Intervenors devote a single footnote in their brief to contesting that ruling but, as we stated in *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc), "[w]e need not consider cursory arguments made only in a footnote." If we were to consider their argument, however, we would be hard pressed to see why our holding the district court erred in vacating the original version of the Rule would provide the Intervenors any relief inasmuch as the FWS apparently has no intention of recalling the newly promulgated version of that Rule.

represented that it will not argue in the district court, that the Services failed fully to comply with the orders under review, including the requirement to reconsider the No Surprises Rule "in tandem with the ... [Permit Revocation Rule]," 294 F. Supp. 2d at 91. Although the Council may yet argue the No Surprises Rule and the Permit Revocation Rule are inconsistent with one another, the orders under review did not provide the Council with that opening; the Council has been making that argument ever since the Permit Revocation Rule was first adopted, *see, e.g.*, Plaintiffs' Statement of Material Facts That Are Not In Genuine Dispute at 18 (referring to "the tension between the potential for permit revocation ... in response to unforseen [sic] circumstances and the No Surprises rule"), and nothing in the orders makes that argument any more or any less persuasive.

Finally, the Services argue there is a continuing effect because a favorable decision by this court could significantly affect the amount of attorneys' fees awarded to the Council; specifically, we are told, if the Council obtains "no further relief concerning the [No Surprises Rule, then] the district court would be required to eliminate from the fee award all time spent litigating the [No Surprises Rule] that is distinct from time litigating the [Permit Revocation Rule]." But the Supreme Court has squarely rejected this theory: An "interest in attorney's fees is ... insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990).

We therefore proceed to consider whether the present controversy falls within the exception to mootness for matters "capable of repetition, yet evading review." *So. Pac. Terminal Co.*, 219 U.S. at 515. For an injury to be deemed capable of repetition, "there must be a 'reasonable expectation' or 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455

U.S. 478, 482 (1982).

The question is, what does it mean for "the same controversy" to recur? The level of generality with which one describes the controversy will often determine the answer. The inquiry in this case is much simplified, however, because even the Services' framing of the controversy shows it is not at all likely to recur. According to the Services, the district court exceeded its authority by suspending and remanding the No Surprises Rule without having held it was either procedurally or substantively defective -- the court held merely that it was "intertwined with the [defectively promulgated Permit Revocation Rule]," 294 F. Supp. 2d at 91 -- and by imposing a deadline for repromulgating the latter Rule. All these measures appear, however, to have stemmed directly from the FWS's initial promulgation of the Permit Revocation Rule during the pendency of this litigation over the No Surprises Rule, and all were evidently aimed at minimizing the delay occasioned thereby. The orders under review therefore do not bespeak a belief on the part of the district court that it is generally authorized to suspend presumptively valid rules or to dictate the Services' priorities. Although a recurrence of the peculiar circumstances that elicited the orders is, of course, a theoretical possibility, *see Beethoven.com LLC*, 394 F.3d at 951, as a practical matter the probability of their recurring is too low to warrant our deciding the issues presented when no relief can be afforded.

The Intervenors, for their part, argue that the district court's threshold rulings -- that the Council has standing and that its facial challenge to the No Surprises Rule is ripe for resolution -- are alone sufficient to keep these appeals from being moot. The doctrines of standing, ripeness, and mootness, however, all derive from the "case or controversy" requirement of Article III. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (standing);

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (ripeness); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000) (mootness).  If any one of them is not satisfied, then the court is without jurisdiction over the suit and has no occasion -- indeed, may have no authority -- to consider the others.  *See Nat'l Kidney Patients Ass'n v. Sullivan*, 902 F.2d 51, 54 (D.C. Cir. 1990) (dismissing interlocutory appeal as moot without reaching argument that district court lacked subject-matter jurisdiction).   Because the present appeals are clearly moot, we do not address whether the Council had standing to bring a facial challenge to the No Surprises Rule when it did and whether that claim was then ripe for review.

## III.  Conclusion

We hold these interlocutory appeals no longer present a live controversy.   Therefore, we dismiss them as moot, vacate the orders under review, *see Munsingwear,* 340 U.S. at 40, and remand the case for further proceedings before the district court.

*So ordered*.