# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 16, 2010          Decided July 6, 2010

No. 09-7026

DISTRICT OF COLUMBIA,
APPELLEE

v.

JOHN DOE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01451-EGS)

*Jane Doe* argued the cause for the appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, argued the cause for the appellee. *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on brief.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: John Doe[1] appeals the district court's grant of summary judgment to the District of Columbia (District or D.C.) on its claim that a hearing officer exceeded his authority under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (IDEA), in modifying a disciplinary action the D.C. Public Schools system (DCPS) had imposed on Doe. Doe argues the matter is moot, the District's complaint is untimely, the district court erred on the merits and the district judge was biased against him. We proceed by, first, laying out the relevant federal and local legal framework, then describing this dispute's ample history and, finally, assessing Doe's arguments. We conclude the district court erred on the merits but we reject Doe's other arguments.

## I.

Through the IDEA federal funds support state and local educational agencies in furthering the education of disabled children. As a condition to receiving funds under the IDEA, an educational agency must maintain policies and procedures ensuring that a "free appropriate public education [(FAPE)] is available to all children with disabilities residing in the state between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A) (1998).[2] To that end, the IDEA

---

[1]Jane Doe, as the next best friend of John Doe, was the defendant and original appellant in this action. After reaching majority John replaced Jane as the defendant/appellant.

[2]In 2004 the Congress amended the IDEA effective July 1, 2005. Pub. L. No. 108-446, § 302, 118 Stat. 2647, 2803 (2004). Because the hearing officer's decision reviewed herein occurred in 2004, *see infra* Part II, all subsequent citations to the IDEA are to the version in effect from July 1, 1998, *see* Pub. L. No. 105-17, § 201, 111 Stat. 37, 156 (1997), until June 30, 2005, unless otherwise noted.

"establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311-12 (1988) (discussing IDEA's predecessor—the Education of the Handicapped Act of 1975 (EHA)).

Under certain circumstances, an educational agency may remove a disabled child from his school and place him in an "alternative educational setting" in response to disciplinary problems. 20 U.S.C. § 1415(k). If, as in this case, an educational agency intends to place a disabled student in an alternative educational setting for more than ten days because the child broke a rule applicable to all students, it must notify the child's parents and timely conduct a "manifestation determination review" (MDR). *Id.* § 1415(k)(4)(A). An MDR team—including the child's parents, at least one of the child's teachers, at least one special education teacher, a representative of the local educational agency and, if appropriate, the child himself—determines whether the offending behavior was a manifestation of the child's disability. *See id.* §§ 1415(k)(4)(C), 1414(d)(1)(B). If the MDR team determines that the behavior was not a manifestation of the child's disability, then "the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner in which they would be applied to children without disabilities," except that the educational agency must continue to provide the child a FAPE. *Id.* § 1415(k)(5)(A) (cross-referencing *id.* § 1412(a)(1)). If a child's parent "disagrees with a determination that the child's behavior was not a manifestation of the child's disability or with any decision regarding placement," *id.* § 1415(k)(6)(A)(i), she may request an "impartial due process hearing" under the IDEA, *id.* § 1415(f). *See also id.* § 1415(b)(6) (ensuring parents "an opportunity to present complaints with respect to any matter relating to the . . .

educational placement of the child, or the provision of a [FAPE] to such child"). Any party aggrieved by an IDEA hearing officer's decision may bring suit in district court. *Id.* § 1415(i)(2)(A).

At the local level, D.C. Municipal Regulations provide for the discipline of DCPS students. Among the disciplinary actions they permit is "class exclusion," which may entail placement in an alternative educational setting. 5 DCMR[3] § 2599.2;[4] *see id.* §§ 2501.1(g), 2502.3. The regulations delineate "Level I" infractions, which are punishable by class exclusion for ten days or fewer, and "Level II" infractions, which are punishable by class exclusion for no fewer than eleven days and no longer than two semesters. *Id.* § 2502.3. The regulations also detail procedures the DCPS must follow when taking disciplinary action. Under this framework, "[t]he decision to effect a disciplinary action shall be made by the principal or the principal's designee," although "[t]he implementation of disciplinary action for a Level II infraction" must be approved by, and may be modified by, the DCPS Superintendent or his designee. *Id.* § 2505.2. Before a child is disciplined his parent must be notified and the child must "be given a conference with

---

[3]All references herein to the DCMR are to the version in effect throughout 2004. *See* 47 D.C. Reg. 1718 (Feb. 23, 2001); 52 D.C. Reg. 10558 (Dec. 2, 2005).

[4]Although the District, hearing officers and district court have conflated the terms "class exclusion" and "suspension" in this case, they have distinct meanings under the DCMR. "Class exclusion" is "the temporary denial of the right of a student to attend a particular class or classes for less than one (1) school year," which may include "placement in an alternative education setting." 5 DCMR § 2599.2. "Suspension" is "the denial of the right of a student to attend any D.C. Public School or program . . . for a defined period of time . . . but in no event exceeding ten (10) school days." *Id.*

the school official responsible for making or approving the disciplinary action." *Id.* §§ 2505.3-2505.4. Also, the child's parent is entitled to request a "disciplinary hearing." *See id.* § 2505.11-2505.25. At the disciplinary hearing, the "hearing officer shall determine that all due process procedures have been followed or waived," *id.* § 2505.22, and "[i]t shall be the burden of the D.C. Public Schools to show by a preponderance of the evidence that the student did, in fact, commit the infraction(s) upon which the disciplinary action is based," *id.* § 2505.18. "Upon conclusion of a disciplinary hearing," the hearing officer must issue a written determination including, *inter alia*, a "determination regarding the appropriateness of the disciplinary action or an order for a modification thereof." *Id.* § 2507.1(d). "The hearing officer's determination with respect to disciplinary actions other than expulsion shall be binding unless changed following appeal to the [DCPS] Superintendent or Superintendent's designee." *Id.* § 2507.4; *see also id.* § 2508.2 ("With respect to all disciplinary actions, the Superintendent may overrule or modify any proposed disciplinary action including expulsion.").

In addition to these generally applicable provisions, D.C. Municipal Regulations also implement the IDEA. *See id.* § 2510 ("Proposed Discipline of a Student with Disability"); *id.* § 2502.8 ("Disciplinary action for students with disabilities shall be imposed in compliance with § 2510 of these Rules."). Like the IDEA, these regulations provide that (1) a disciplinary change in placement lasting over ten days for a violation of a generally applicable rule must be proceeded by an MDR, *id.* § 2510.7; (2) if a child's infraction was not a manifestation of his disability, he is subject to the same manner of discipline as a non-disabled child, except that the DCPS must continue to provide him a FAPE, *id.* § 2510.10; and (3) if a child's parent wants to challenge "any decision regarding placement," she is entitled to a hearing, *id.* § 2510.12.

II.

On March 5, 2004 the DCPS determined that John Doe—a sixth-grade student nearing graduation from the District's Janney Elementary School—was eligible for special education under the IDEA[5] due to a diagnosis of attention deficit hyperactivity disorder. On March 30, 2004 Doe "acted out in class and was disrespectful to [a] substitute teacher." IDEA Hearing Officer's Decision at 4, DCPS Office of Compliance (June 4, 2004) (HOD).[6] The substitute reported the incident to Janney's principal, Charles Abelmann. Abelmman conferred with Doe the next day and determined that his conduct had violated 5 DCMR § 2503.1(b), constituting a Level I infraction. *See* 5 DCMR § 2503.1(b) (Level I infractions include "repeated

---

[5]A central component of a disabled child's special education under the IDEA is the provision and maintenance of an "individualized education program" (IEP), which is a written statement setting out a disabled child's individually tailored goals and the means of achieving them. *See* 20 U.S.C. § 1414(d). The team that formulates a child's IEP includes the child's parents, at least one of the child's teachers, at least one special education teacher, a representative of the local educational agency and, if appropriate, the child himself. *Id.* § 1414(d)(1)(B). Doe's IEP went into effect when his mother signed it, after some delay, on April 8, 2004.

[6]Specifically, Doe:

taunted [the substitute] by coming into the classroom with a sucker and getting two (2) more after being told to remove the first one, not giving his name when asked, taking off his hat when asked, but going to the closet to get another hat and then put it on his head, taking an umbrella out of the closet that he thought belonged to the substitute and threatening not to give it back until the end of the school day.

HOD at 4.

failure to comply with the orders or directions of a . . . teacher . . . where failure to comply with the order constitutes a disruption"). Because Doe had committed two other Level I infractions during that school year, both involving fighting, Abelmann classified this latest as a Level II infraction, pursuant to 5 DCMR § 2503.1, and decided to remove Doe from Janney for fifty-four days and place him in another facility, Choice Academy, as an alternative educational setting. The Assistant Superintendent approved the Level II classification.

An MDR convened on April 1, 2004 to determine whether Doe's infraction had been a manifestation of his disability. The MDR team included Abelmann, Doe's regular teacher, a special education teacher, a social worker and a behavior specialist. Doe's mother was notified of the MDR but did not attend. The team concluded that Doe's infraction had not been a manifestation of his disability and agreed with Abelmann's decision to remove Doe from Janney. The team did not, however, document discussion of any specific alternative educational setting.

Doe's mother requested a hearing to challenge the manifestation determination and the class exclusion. Instead of requesting an IDEA "impartial due process hearing," however, she requested a "disciplinary hearing" pursuant to 5 DCMR §§ 2505.11-2505.25.[7] (Doe's mother later made clear that the

---

[7]Although the record is bereft of any clear explanation of the practical distinctions between the two kinds of hearings, in *Doe v. D.C. Pub. Schs.*, C.A. No. 04-732 (D.D.C.), the District filed a declaration by a "Staff Assistant for the Student Disciplinary Hearing Office in the Division of Student Services for the District of Columbia Public Schools," which explained:

> The disciplinary hearings are separate and distinct from the IDEA administrative due process hearings, although they use similar terms such as "hearing officer" and "hearing

choice of hearing was a mistake, resulting from her unfamiliarity with the IDEA's intricacies.) The disciplinary hearing convened on April 8, 2004 and the hearing officer issued a determination on April 14. He upheld the MDR team's conclusion that Doe's infraction was not a manifestation of his disability. But he reduced the duration of Doe's class exclusion from fifty-four days to ten, concluding that the longer term was inappropriate given the infraction's trivial nature. *See id.* § 2507.1(d) (authorizing disciplinary hearing officer to modify inappropriate disciplinary action).

The DCPS appealed the disciplinary hearing officer's determination to the Assistant Superintendent, in his capacity as the Superintendent's designee, pursuant to 5 DCMR § 2507.4. It argued the hearing officer erred in reducing a class exclusion for a Level II infraction to fewer than eleven days. The Assistant Superintendent agreed and, on April 23, 2004, changed Doe's class exclusion to forty-five days.

Jane Doe then filed suit in the district court to obtain a temporary restraining order preventing implementation of the class exclusion. *Doe v. D.C. Pub. Schs.*, C.A. No. 04-732 (D.D.C.). The District opposed Doe on the ground that she had

---

officer's determination." Moreover, the qualifications for a disciplinary hearing officer differ from that [sic] of an IDEA hearing officer.

Under IDEA, the hearing officer must be an attorney who has practice [sic] law for a period of five (5) or more years or one who has a Ph. D. or a terminal degree in education. Under disciplinary hearings, the disciplinary hearing officer may be a school system employee whereas IDEA hearing officers may not be . . . .

Declaration of Ms. Yvonne Martin, *Doe v. D.C. Pub. Schs.*, C.A. No. 04-732 (D.D.C. May 11, 2004) (Supplement to Def.'s Opp'n to Pl.'s Mot. for TRO ex. 6).

not exhausted her administrative remedies by "request[ing] a due process hearing pursuant to the IDEA." Def.'s Opp'n to Pl.'s Mot. for TRO at 6, *Doe v. D.C. Pub. Schs.*, C.A. No. 04-732 (D.D.C. May 7, 2004). On May 11, 2004 the district court dismissed the case without prejudice after the parties agreed at a motions conference to pursue an IDEA hearing. *See* 20 U.S.C. § 1415(f).

The IDEA hearing took place on three days in May 2004. The hearing officer heard testimony from nine witnesses, including a teacher, a psychologist, a social worker and Abelmann. He issued his decision (HOD) on June 4, 2004 "pursuant to" the IDEA. HOD at 3. He framed the "issue" as "[w]hether DCPS denied [Doe] a Free and Appropriate Public Education" by imposing the forty-five day class exclusion. HOD at 3. In his analysis, he first upheld the determination that Doe's infraction had not been a manifestation of his disability. He then reduced the length of Doe's class exclusion from forty-five days to eleven, holding that the latter duration was "more appropriate" because Doe's infraction consisted of nothing more than being a "nuisance." HOD at 28. Next, he determined that, while Choice Academy "may be able to provide [Doe] with educational benefit," it was "not appropriate" and "not warranted" as an alternative academic setting for him. HOD at 29. He based his conclusion in part on the fact that Doe's MDR team had not specifically approved of that facility. *Id.* He also stated that "it is not reasonable to place the student at Choice for the remainder of the school year and his last year in elementary school at Janney for the purpose of having him learn that there are consequences for [sic] his behavior." HOD at 29. Accordingly, he ordered that Doe spend the remainder of the year at Janney. He also ordered that, in the event Doe had not already served the entire eleven days of class exclusion, Janney was to "offer alternatives such as those specified in [5 DCMR §]

2501.1."[8]   HOD at 30.   Doe graduated from Janney soon thereafter.

On July 2, 2004 the District requested reconsideration, which the IDEA hearing officer denied on July 28, 2004.  The District then filed suit in the district court, *see* 20 U.S.C. § 1415(i)(2)(A), alleging the IDEA hearing officer exceeded his authority by modifying the terms of Doe's class exclusion.  Doe countered that the hearing officer had acted within his authority and, in any event, the case was moot because he no longer attended a DCPS school.  The parties eventually filed cross motions for summary judgment and, on August 28, 2008, the court granted the District summary judgment.  First the court held that the action should not be dismissed as moot because it was "'capable of repetition, yet evading review.'" *District of Columbia v. Doe ex rel. Doe*, 573 F. Supp. 2d 57, 62 (D.D.C. Aug. 28, 2008) (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 308 (D.C. Cir. 1991)).  On the merits, the court interpreted the HOD as finding that Doe's class exclusion did not violate the IDEA; the court then concluded that the hearing officer exceeded his authority in modifying the Assistant Superintendent's disciplinary decision notwithstanding the finding. Doe moved for reconsideration, which the district court denied on New Year's Eve 2008.  Doe timely appealed.

---

[8]Section 2501.1 provides for "(a) Reprimands; (b) Detention; (c) Additional work assignments; (d) Restitution; (e) Mediation; (f) In-school disciplinary centers; (g) Alternative educational programs and placements; (h) Rehabilitative programs; (i) Crime awareness/prevention programs; (j) Probation; (k) Exclusion from extracurricular activity; (l) Peer court; and (m) Transfer."  5 DCMR § 2501.1.

11

III.

Having traveled a long, unusual road to this court, Doe now argues that (1) this action is moot, (2) the district court erred in declining to dismiss the District's complaint as untimely, (3) the district court erred on the merits in holding that the IDEA hearing officer exceeded his authority and (4) the district judge was biased against him. We address his arguments in turn.

A. Mootness

Under Article III of the United States Constitution we "may only adjudicate actual, ongoing controversies." *Honig*, 484 U.S. at 317; *see Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). Accordingly, the mootness doctrine prohibits us from deciding a case if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (internal quotation omitted). That seems to be the case here; both parties acknowledge that the DCPS can no longer enforce additional discipline against Doe as he is no longer a DCPS student. There is a mootness exception, however, if an action is "capable of repetition, yet evading review." *Jenkins*, 935 F.2d at 308. The exception applies where: "'(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* at 307 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)) (quotation omitted) (alteration in *Jenkins*).

We had occasion to apply the exception in the IDEA context in *Jenkins*, 935 F.2d at 307-308. In that case, an IDEA hearing officer ruled that the DCPS had given insufficient notice to a disabled child's parents that it intended to change his placement in furtherance of his IEP. *Id.* at 305-06; *see supra*

note 5. As a remedy, the hearing officer ordered that the child spend the impending school year in a private school in accordance with the parents' wishes but contrary to the DCPS's. *Id.* at 306. The DCPS Superintendent filed suit in the district court challenging the hearing officer's decision to change the child's placement. *Id.* The district court held the case was moot because, by the time it had ruled on the parents' motion to dismiss, the school year had already ended. *Id.* We reversed, holding that the challenged action was "capable of repetition, yet evading review." *Id.* at 308. Applying the exception's first prong, we held that "there can be no doubt that a one-year placement order under the IDEA is, by its nature, 'too short [in duration] to be fully litigated prior to its . . . expiration.'" *Id.* at 307 (quoting *Honig*, 484 U.S. at 322-23). Regarding the second prong, we held that "there is a 'reasonable expectation' that the District will again be aggrieved by a similar application of the IDEA's notice requirements." *Jenkins*, 935 F.2d at 308. We concluded that the issue was "a recurring one" as the "case [wa]s not simply about where [the child] would attend school for the [relevant] school year, but rather about what sort of legal standard the District must meet in providing notice to [his] parents, and to other parents as well." *Id.* at 308, 306. And, while we noted a reasonable likelihood that the District would be confronted again with the same question regarding the same student, our decision turned on the reasonable expectation that "*the same complaining party*"—*the District*—would repeatedly confront the issue as to disabled children generally. *See id.* at 307-08 (emphasis added).

Turning to this appeal, we start by asking whether the challenged action—a class exclusion modified by an IDEA hearing officer—evades review. The Supreme Court once somewhat euphemistically characterized administrative and judicial review of cases under this statute as "ponderous." *Honig*, 484 U.S. at 322; *see also Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 1000 (1st Cir. 1990) ("[P]lacement

disputes may take years to wind their way through the administrative/judicial labyrinth."). This is a case in point. Doe's class exclusion was nearly six years ago. It has been several years since he attended a DCPS school. He has long been immune from any discipline the District might impose were it to successfully litigate a challenge to the IDEA hearing officer's decision. And there is no reason to think that Doe's status is anomalous. As the Supreme Court noted in *Honig*, "the adolescent student improperly disciplined . . . will often be finished with school or otherwise ineligible for EHA protections by the time review can be had" of the improper disciplinary decision. 484 U.S. at 322-23. We conclude, therefore, that this action "evades review." As for the second prong, here, as in *Jenkins*, the legal issue—an IDEA hearing officer's authority to revise DCPS-imposed discipline upon finding that an infraction is not a manifestation of a disability—is almost certain to be "a recurring one." *Jenkins*, 935 F.2d at 308. We can reasonably expect that the District will again "be aggrieved by similar application of the IDEA." *Id.* In other words, this case is "capable of repetition." The exception therefore applies. *See DeVries by DeBlaay v. Spillane*, 853 F.2d 264, 268 (4th Cir. 1988) ("EHA cases are classic cases for application of the 'capable of repetition, yet evading review' rule.").

Doe counters that the case is moot because the District is pursuing it only to avoid paying attorney fees. *See* Appellee's Br. 23 n.8 (acknowledging District's offer to settle if Doe would waive right to attorney fees). He is right that "[a]n 'interest in attorneys' fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 229 (D.C. Cir. 2005) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)) (ellipsis in *Norton*). As explained above, however, our jurisdiction is based on our conclusion that the action is "capable of repetition, yet evading review," not on a controversy regarding attorney fees.

14

## B. Timeliness

When the District brought this action in the district court the limitations period for filing a complaint challenging an IDEA hearing officer's decision was thirty days under our decision in *Spiegler v. District of Columbia*, 866 F.2d 461, 466 (D.C. Cir. 1989).[9]   The District filed its complaint on August 26, 2004, eighty-three days after the HOD issued.  Relying primarily on *R.S. v. District of Columbia*, 292 F. Supp. 2d 23 (D.D.C. 2003), however, the District argues that its complaint was timely because its request for reconsideration by the IDEA hearing officer tolled the limitations period.  Doe argues that *R.S.* "was wrongly decided" and that, contrary to the holding in that case, the District's request for reconsideration was itself untimely. Reply. Br. 11.

We do not resolve this dispute because it is not properly before us.  Doe did not raise his timeliness argument in the district court until his post-judgment "Motion to Stay Proceedings and to Vacate and Reconsider," *District of Columbia v. Doe ex rel. Doe*, C.A. No. 04-1451 (D.D.C. Sept. 12, 2008).  The district court properly characterized that motion as one to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).  *See* Mem. Op. at 2, *District of Columbia v. Doe ex rel. Doe*, C.A. No. 04-1451 (D.D.C. Dec. 31, 2008); *Emory v. Sec'y of Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987) ("'[A]ny motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.'" (quoting 9 Moore's Fed. Practice § 204.12[1] at 4-67 (1987))) (alteration in *Emory*).  It is well settled that "an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised; accordingly, such an issue is not preserved for

---

[9]The Congress has since enacted a ninety-day statute of limitations.  20 U.S.C. § 1415(i)(2)(B) (2005).

appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider the issue." *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) (collecting cases); *see also Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007) ("Rule 59(e) motions are aimed at reconsideration, not initial consideration.") (internal quotation omitted). The district court did not exercise its discretion to excuse Doe's untimeliness; on the contrary, it declined to consider the issue because Doe "should have raised [it] earlier." Mem. Op. at 4, *District of Columbia v. Doe ex rel. Doe*, C.A. No. 04-1451 (D.D.C. Dec. 31, 2008). As a result, it is not for us to decide timeliness *vel non*.

But Doe says we must reach his argument because the district court did not have *jurisdiction* over the District's untimely complaint. *See Bowles v. Russell*, 551 U.S. 205, 213 (2007) ("forfeiture or waiver" does not apply where untimeliness precludes jurisdiction). As noted, however, the applicable limitations period was then prescribed by common law, not by statute. *See Spiegler*, 866 F.2d at 466 (borrowing limitations period from D.C. App. R. 15(a)). The limitations period was not jurisdictional and Doe's argument thus fails. *See Bowles*, 551 U.S. at 210-11 & n.2 (describing "jurisdictional significance" of limitations period set by statute); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject matter jurisdiction."); *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1290 n.1 (9th Cir. 2006) (failure to comply with limitations period borrowed from local law is not jurisdictional in IDEA action).

## C. Merits

Because the district court relied entirely on the administrative record, *cf.* 20 U.S.C. § 1415(i)(2)(B)(ii) (district court "shall hear additional evidence at the request of a party"), we review its grant of summary judgment de novo, applying the same standard it used. *See Reid ex rel. Reid v. District of*

*Columbia*, 401 F.3d 516, 521-22 (D.C. Cir. 2005). Under that standard, the IDEA hearing officer's decision warrants "less deference than is conventional" in administrative proceedings but the District "must at least take on the burden of persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988); *see also Dale M. ex rel. Alice M. v. Bd. of Educ.*, 237 F.3d 813, 815 (7th Cir. 2001) (if district court relies solely on administrative record, IDEA hearing officer's decision warrants "due deference").

Doe claims the district court erred in holding that the IDEA hearing officer exceeded his authority by modifying the terms of Doe's class exclusion. Doe argues, in part, that the IDEA hearing officer was authorized to decide whether the DCPS's disciplinary action denied Doe a FAPE and that the hearing officer modified Doe's punishment only after finding that the proposed class exclusion did so. The District counters that the district court's holding is well founded inasmuch as the Superintendent (or his designee), not an IDEA hearing officer, has the final say regarding discipline that does not imperil a disabled child's rights under the IDEA. It contends that the hearing officer "did not find any violation of the IDEA" but modified Doe's punishment on non-IDEA grounds. Appellee's Br. 11.

It is true that the Superintendent has the last word regarding discipline imposed under the DCMR for misconduct that is not a manifestation of the child's disability as long as the disciplinary action does not deprive the child of a FAPE. *See* 5 DCMR § 2508.2 ("With respect to all disciplinary actions, the Superintendent may overrule or modify any proposed disciplinary action including expulsion."); *id.* § 2502.8 ("Disciplinary action for students with disabilities shall be imposed in compliance with § 2510 of these Rules."); *id.* § 2510.10 (if no manifestation, disabled child subject to same disciplinary procedures as non-disabled children, except school

system must provide FAPE). It is also true, however, that federal law *and* D.C. regulations empower an IDEA hearing officer to review "any decision regarding placement of a [disabled] child," 20 U.S.C. § 1415(k)(6)(A)(i); 5 DCMR § 2510.12, and *also* require the hearing officer to ensure that disciplinary action does not deprive a disabled child of a FAPE. *See* 20 U.S.C. § 1415(k)(5)(A); 5 DCMR § 2510.10. Because we find that the hearing officer modified Doe's punishment only after finding that class exclusion would deny Doe a FAPE, we reject the District's argument that the hearing officer exceeded his authority.

That the IDEA hearing officer's focus was on Doe's FAPE is apparent from the HOD; it contains numerous references to the IDEA and to the IDEA's central maxim that a disabled student is entitled to a free appropriate public education. It is captioned: "Individuals with Disabilities Education Act . . . Impartial Due Process Hearing." HOD at 3. It declares that it "was written pursuant to the *Individuals with Disabilities Education Act*." *Id.* (italics in original). It defines the issue as "[w]hether DCPS denied the student a [FAPE] by suspending the student for forty-five (45) days." *Id.* Setting out the legal authority, it makes clear that "DCPS is obligated to ensure that all children with disabilities receive a [FAPE]" and that "[t]his obligation includes . . . determining an appropriate placement." *Id.* at 24. Then, having established that ensuring Doe's FAPE requires evaluating the appropriateness of his proposed placement, it does so. In particular, it determined that, while Choice Academy "may be able to provide the student with educational benefit," it was "not appropriate" and "not warranted" as an alternative academic placement for Doe.[10] *Id.*

---

[10]Although our review is de novo, we note that the district court's account of this aspect of the HOD missed the mark, *viz.*, at no point did the IDEA hearing officer "conclud[e] that placement at Choice

18

at 29. Viewing the HOD as a whole, therefore, we find the IDEA hearing officer's review of Doe's class exclusion within the scope of his duty to ensure Doe's FAPE. Indeed, few developments could bear more on the "appropriateness" of a child's education than his being taken from his elementary school and placed in a new setting for nine weeks.

To be sure, the HOD contains numerous references to the DCMR, which, taken piecemeal, seem to support the District's argument that the IDEA hearing officer usurped the Superintendent's disciplinary prerogative by reviewing Doe's class exclusion for defects unrelated to the IDEA. For example, the HOD repeatedly refers to the DCPS's non-compliance with 5 DCMR § 2510.4, which section is inapplicable to Doe.[11] But we believe the hearing officer's invocation of the DCMR merely informed his IDEA-centered appraisal of Doe's FAPE. After all, section 2510 *implements* the IDEA. And it empowers a hearing officer to review "any decision regarding placement," *id.* § 2510.12, in conjunction with ensuring a disabled child's FAPE, *id.* § 2510.10. Further, it specifically directs a hearing

---

Academy would not constitute denial of a FAPE." *Doe*, 573 F. Supp. 2d at 63.

[11]Section 2510.4 permits a hearing officer to "order a change in the placement of a child with a disability to an appropriate interim alternative educational setting for not more than forty-five (45) days" if, *inter alia*, the DCPS has (1) "demonstrated by substantial evidence" that the child is likely a danger to others and (2) made reasonable efforts to minimize the danger the child poses in his current setting. Here, however, the District was not required to make these showings because its disciplinary action was premised on a finding that Doe's infraction was not a manifestation of his disability; because of that finding, Doe could be disciplined in the same manner as a non-disabled child, *i.e.*, without regard to section 2510.4, so long as he was provided a FAPE. *See* 5 DCMR § 2510.10.

officer, when evaluating a proposed alternative educational placement, to consider the criteria listed in section 2510.4, including the placement's "appropriateness." *See id.* § 2510.15. Taking all of this into consideration, we conclude that the IDEA hearing officer acted within his authority in rejecting the DCPS's disciplinary action as inconsistent with Doe's FAPE, notwithstanding his determination that Doe's infraction was not a manifestation of his disability.

### D. Recusal

Finally, Doe argues the district judge was biased against him and therefore should have recused himself. By statute, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. In reviewing claims of this sort, "this circuit applies an 'objective' standard: Recusal is required when a reasonable and informed observer would question the judge's impartiality." *SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 494 (D.C. Cir. 2004) (internal quotation omitted). "[J]udicial rulings alone almost never constitute a valid basis" for an allegation of "bias or partiality." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Nor do "expressions of impatience, dissatisfaction, annoyance, and even anger." *Id.*

Doe argues the district judge's impartiality was objectively questionable because he (1) failed to seal a hearing transcript that allegedly revealed John Doe's identity,[12] (2) "personally

---

[12]Doe refers to his April 7, 2006 motion to seal the transcript of the hearing held on February 15, 2006. Appellant's Br. 32-33. According to him, "the record of that hearing remains unsealed." Reply Br. 18 n.17. The District responds that the district court's failure to seal the transcript "appears to have been an oversight" and that the District "has no objection to an order providing that, if someone orders a copy of the transcript, the court reporter should

attacked [Jane] Doe by accusing her of deceptively working around his 'no personal service rule' . . . and . . . of engaging in unethical behavior by having 'ex parte' communications with chambers" and (3) graduated from D.C. public schools and has "been given special recognition by that system." Appellant's Br. 32. *Liteky* forecloses Doe's first two grounds for recusal because they are based on the district judge's allegedly flawed rulings and excessive statements. As for the third ground, being an alumnus of DCPS schools does not preclude a district judge from presiding over a case involving the DCPS. *See*, *e.g.*, *Lunde v. Helms*, 29 F.3d 367, 370-71 (8th Cir. 1994) (recusal not required where judge was party defendant's alumnus, financial contributor and participant in its educational programs); *Wu v. Thomas*, 996 F.2d 271, 274-75 & n.7 (11th Cir. 1993) (recusal not required where judge was party defendant's alumnus, adjunct professor and financial contributor). We see no objective indicia of bias here.

\*\*\*

In *Honig* the Supreme Court explained that, in enacting the IDEA's precursor, the "Congress very much meant to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school." 484 U.S. at 323 (emphasis in original). Today we attempt to effectuate the Congress's intention by recognizing the authority of an IDEA hearing officer to ensure that every disabled child receives a free appropriate public education, including in the context of a local school system's disciplinary decision. Accordingly, and for the foregoing reasons, we reverse the district court's grant of summary judgment to the District.

*So ordered.*

---

substitute the pseudonym John Doe for the name of the child, and Jane Doe for the name of the mother in the transcript." Appellee's Br. 36.